358

[661 NYS2d 233]

In the Matter of ROBERT H. HIRSCH (Admitted as ROBERT HOWARD HIRSCH), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, July 21, 1997

### APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains, for petitioner.
*Richard E. Grayson,* White Plains, for respondent.

### OPINION OF THE COURT

Per Curiam.
The respondent was served with a petition containing 14

charges of professional misconduct. The Special Referee sustained all 14 charges. The Grievance Committee now moves to confirm the Special Referee's report. The respondent has submitted an affirmation in response requesting that the Special Referee's findings be disaffirmed in full or that any discipline imposed be limited to a public censure.

Charges One through Six pertain to the respondent's conduct with respect to a negligence case.

Charge One alleged that the respondent neglected a legal matter entrusted to him, in violation of Code of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30 [a] [3]).

On or about May 7, 1989, Gloria Maida was injured when a soda bottle she was opening erupted and the bottle cap dislodged and became embedded in her hand. Ms. Maida retained the respondent on or about May 23, 1989. She signed an incomplete contingency retainer agreement. The respondent failed to timely commence an action and to inform his client of that fact.

Charge Two alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and of knowingly making a false statement of law or fact, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]) and DR 7-102 (A) (5) (22 NYCRR 1200.33 [a] [5]).

On or about May 8, 1992, the respondent commenced an action on behalf of his client against the Aluminum Company of America (hereinafter Alcoa), Coca-Cola Bottling Company of New York, Inc. (hereinafter Bottling), the Coca-Cola Co. (hereinafter Coca-Cola), and the Great Atlantic and Pacific Tea Company, Inc. (hereinafter A & P), by filing with the Rockland County Sheriff's Department. The defendants were served with the summons and complaint in or about July 1992. Between July 1992 and August 1992, the defendants interposed answers, demands for bills of particulars, and demands for discovery. The complaint lists the date of the injury as May 9, 1989. By falsifying the date of injury, the respondent committed a fraud by misrepresenting a material fact to the court and the defendants in the action.

Charge Three alleged that the respondent engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (A) (5) (22 NYCRR 1200.3 [a] [5]).

After the respondent failed to respond to the demands for bills of particulars and demands for discovery, the defendants

moved separately to preclude. By orders dated March 1, April 2, and May 13, 1993, respectively, the motions were granted unless the respondent served bills of particulars and responded to all outstanding discovery demands within 30 days. On or about April 8, 1993, a preliminary conference was held and the respondent was ordered to serve bills of particulars and other discovery items on all defendants by April 19, 1993. An examination before trial of the respondent was scheduled for June 14, 1993.

After the respondent failed to comply with the preclusion orders and with the preliminary conference order, the defendants moved to dismiss the complaint. By order dated September 9, 1993, the motions of Coca-Cola, Bottling, and A & P were granted, and on February 25, 1994, Alcoa's motion was granted, on the ground that the plaintiff willfully refused to obey orders of disclosure.

By failing to comply with the discovery demands and court orders, the respondent knew or should have known that he was placing an undue burden on the court and preventing the defendants from learning the true status of the matter.

Charge Four alleged that the respondent engaged in conduct adversely reflecting upon his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

The respondent failed to communicate with his client and to inform her of the status of the matter for which she had retained him.

Charge Five alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

In response to the inquiries by Ms. Maida to the respondent and his office staff with respect to the status of her action, assurances were made to her that this matter was proceeding appropriately.

Charge Six alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

The respondent failed to file a retainer statement as required by 22 NYCRR 691.20.

Charges Seven through Thirteen pertain to the respondent's conduct with respect to the estate of Robert Toler.

Charge Seven alleged that the respondent neglected a legal matter entrusted to him, in violation of Code of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30 [a] [3]).

The respondent drafted a will and codicil for Ronald Toler in or about March 1993. The respondent was therein nominated coexecutor and cotrustee with Mr. Toler's sister, Betty Staton, a Kentucky resident. Following Mr. Toler's death on or about April 27, 1993, the respondent acted as attorney for the estate and as coexecutor.

Attorneys on behalf of Jessee Toler, a nonmarital child, requested copies of documents and information in order to have the proceeds of an insurance policy released for his benefit.

The respondent failed to file the probate petition until about January 21, 1994, after a complaint was filed with the Grievance Committee by Michelle Conklin, the mother of the aforementioned child. Letters testamentary were issued to the respondent and Betty Staton on or about April 26, 1994.

Jessee Toler's attorney repeatedly requested that the respondent obtain a tax waiver required for the release of the insurance money. The respondent failed to do so. Nor did he timely file the inventory of estate assets or the estate tax proceeding.

Letters testamentary to the respondent were revoked by order dated February 23, 1995, and the respondent was directed to file an accounting and a petition for judicial settlement within 60 days. He also failed to do that.

Charge Eight alleged that the respondent breached his fiduciary responsibilities by failing to account in a timely manner, engaging in conduct prejudicial to the administration of justice, and disregarding the ruling of a tribunal in violation of Code of Professional Responsibility DR 9-102 (C) (3) (22 NYCRR 1200.46 [c] [3]), DR 1-102 (A) (5) (22 NYCRR 1200.3 [a] [5]) and DR 7-106 (A) (22 NYCRR 1200.37 [a]).

Charge Nine alleged that the respondent engaged in conduct adversely reflecting upon his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

In or about June 1993, the respondent arranged to list Mr. Toler's Wesley Hills property for sale. He sent a listing agreement to Betty Staton for her signature. On or about February 4, 1994, the respondent drafted a contract of sale for that property, signed it as coexecutor, and sent it to Betty Staton for her signature as well. The contract provided for a closing date of

April 1, 1994. Letters testamentary were not issued to the respondent and Ms. Staton until April 26, 1994.

In taking the aforesaid steps in relation to an asset of the estate, the respondent knew or should have known that he was acting without authority and encouraging the coexecutor to do so.

Charge Ten alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and/or conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (8) (22 NYCRR 1200.3 [a] [4], [8]).

The purchaser was unaware that letters testamentary had not been issued. He relied upon the respondent's representations that he was the coexecutor of the estate at the time the contract of sale was negotiated and executed.

Charge Eleven alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and/or conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (8) (22 NYCRR 1200.3 [a] [4], [8]), by giving false and misleading testimony under oath.

On October 6, 1994 and January 11, 1995, the respondent appeared at the Grievance Committee's offices to testify regarding the complaint filed by Michelle Conklin. At his January 11, 1995 appearance, the respondent testified that he informed the purchaser of the Wesley Hills property that the respondent and Betty Staton had been nominated as the executors in Mr. Toler's will. He further testified that he had informed the purchaser at or before the execution of the contract of sale for the property that letters testamentary had not yet been issued.

Charge Twelve alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and/or conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (8) (22 NYCRR 1200.3 [a] [4], [8]).

The closing on the Wesley Hills property took place on or about August 2, 1994. On that date, the respondent signed an affidavit as attorney and coexecutor attesting that an application was made to the New York State Department of Taxation and Finance for release of lien of estate tax for the Wesley Hills property. The respondent also attested that he would hold $15,000 in escrow until delivery of the release of lien. The respondent acknowledged that the affidavit was submitted to

induce Lawyers Title Insurance Co. and CTI Abstract Corp. to insure title to the Wesley Hills property.

At the time the respondent executed the aforesaid affidavit, he knew or should have known that application had not been made for the release of lien.

Charge Thirteen alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and/or adversely reflecting on his fitness to practice law by breaching his fiduciary responsibilities.

The respondent failed to hold $15,000 in escrow to assure compliance with the terms of the affidavit.

Charge Fourteen alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

From approximately September 1993 to approximately December 1994, the respondent maintained an account at the Bank of New York entitled "Robert H. Hirsch ATTT [sic] at Law, Escrow Acct/IOLA." On or about October 3, 1993, the respondent drew a check in the amount of $3,140, payable to Joe Rodriguez and Narcissa A. Rodriguez, which cleared the respondent's account on October 4, 1993. The respondent's records reflect that he did not have funds on deposit for Rodriguez at the time the check cleared his account.

On or about January 20, 1994, the respondent drew a $100 check on that account payable to Eileen M. Bergen, which bore the memo "McClain to Bergen". That check cleared the respondent's account on January 28, 1994.

On or about January 20, 1994, the respondent drew another $100 check on that account payable to Joseph and Eileen McClain. That check bore the memo "McClain to Bergen" and cleared the respondent's account on January 27, 1994.

The respondent's records reflect that he did not have funds on deposit for "McClain to Bergen" at the time the two aforementioned checks cleared his account. At the time the respondent drew the aforesaid checks, which were honored by the bank, they had cleared against funds that the respondent was holding on behalf of other clients or third parties.

Based on the evidence adduced, the Special Referee properly sustained all 14 charges of professional misconduct against the respondent. The Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, we have considered the mitigation proffered by the re-

spondent, including his marital difficulties and their impact on his practice, the significant changes in office procedures which he has implemented, the character evidence submitted on his behalf, and the allegedly similar cases which have resulted in the imposition of a public censure. Additionally, one of the complainants has submitted a letter to the Court, dated February 25, 1997, seeking to withdraw her complaint on the ground that she and her current attorney have reached a settlement with the respondent in the pending malpractice action against him.

The respondent was previously issued a Letter of Admonition dated October 6, 1992, for neglecting a legal matter entrusted to him emanating from his assisting in the handling of an estate.

Under the totality of circumstances, the respondent is suspended from the practice of law for three years.

MANGANO, P. J., BRACKEN, ROSENBLATT, O'BRIEN and FRIEDMANN, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the respondent, Robert H. Hirsch, is suspended from the practice of law for a period of three years, commencing August 21, 1997, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the three-year period, upon furnishing satisfactory proof that (a) during the said period he refrained from practicing or attempting to practice law, (b) he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended and resigned attorneys (22 NYCRR 691.10), and (c) he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Robert H. Hirsch, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.