■ DAVID SHERMAN et al., Appellants, v NAN S. EISENBERG et al., Respondents. [699 NYS2d 371] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered June 15, 1999, which, in an action to declare the validity of the parties' agreement settling a prior action, upon the parties' respective motions for summary judgment, *inter alia*, declared that the Settlement Agreement is null and void, and directed a hearing on whether plaintiffs and their attorney should be sanctioned, unanimously affirmed, with costs.

The three plaintiffs are the children of Irving Sherman and Helen Sherman. In 1965, Irving and Helen entered into a Separation Agreement in the context of their divorce; in their Separation Agreement Irving agreed to bequeath to the three children certain corporate stock.

In 1985, Irving, now remarried to defendant Thelma Sherman, asked his children to waive the benefits to which they were entitled under the Separation Agreement. In July and August 1985, each of the three plaintiffs executed an irrevocable Waiver and Renunciation (the Waivers) of their right to inherit the stock. These Waivers included a statement that consideration for signing had been made through the "various gifts received * * * prior to the execution of this instrument."

Irving died in 1994. In January 1995, the three adult children commenced an action (the Prior Action) against their father's estate and his second wife, Thelma, for the value of the stock due them under the Separation Agreement. Although Bruce Bordelon, Esq. had represented Thelma and Irving during the execution of the Waivers in 1985, by 1995 Bordelon was unable to locate the Waivers so as to defend that action by conclusively proving that the children had previously given up all rights to the stock. Bordelon advised Thelma that he could not locate the Waivers, and had no other documentation in his possession proving the existence of the Waivers, nor any specific memory of having obtained them. Upon his advice, Thelma agreed to settle the Prior Action.

This Settlement Agreement provided Thelma with a life estate in her home in Maine, the remainder to be left to plaintiffs, along with 90% of her estate. Thelma also helped plaintiffs obtain life insurance on her life, for which the plaintiffs expended more than $100,000 in premiums.

Three years later, in August 1998, after Thelma learned that Bordelon died, she requested that the attorney handling his estate make a last attempt to locate the missing Waivers. This time, the Waivers were located and sent to Thelma.

When Thelma's current attorney wrote to Philip A. Green-

berg, Esq., plaintiffs' attorney, to inquire as to plaintiffs' position regarding the import of these Waivers, plaintiffs commenced the present action, seeking declaratory relief asserting that the Settlement Agreement of the prior action was valid and that Thelma has no right, by virtue of the Waivers, to avoid her obligations under the Settlement Agreement. Thelma interposed a counterclaim for rescission of the Settlement Agreement on grounds of fraud.

The IAS Court granted Thelma's cross-motion for summary judgment on her claim for rescission of the Settlement Agreement, concluding as a matter of law that plaintiffs had committed a fraud by their misrepresentations of fact. On appeal, plaintiffs challenge the propriety of overturning the Settlement Agreement on the basis of the newly-found Waivers. Plaintiffs contend that Thelma knew or should have known of the existence of the Waivers before entering into the Settlement Agreement, and therefore may not now rely upon them to rescind the agreement.

We reject plaintiffs' contentions. It cannot be disputed that each plaintiff signed the document entitled "Waiver and Renunciation", and then, in the context of the prior action, denied that they had done so. Such a blatant misrepresentation cannot be excused by protests that counsel informed them that the documents were invalid. Importantly, in none of the submitted affidavits do plaintiffs assert that they either forgot about the Waivers or misunderstood their import.

Nor may plaintiffs avoid the ramifications of their misrepresentation by reliance on *Liling v Segal* (220 AD2d 724). There, the Court dismissed an action brought by an attorney named Bernard Liling against his former law partners, holding that the action was barred because Liling had executed a general release. The Court rejected Liling's argument that the general release he signed should be set aside because of fraud, since one of his former law partners had assured him that the partnership agreement had not been executed by the defendants and was therefore unenforceable (*supra*). Noting that fraud claims require specific assertions of what was said and when it was said, the Court explained that the plaintiff's complaint neither specified when this alleged misrepresentation was made nor even specified whether it was false at the time the defendant made it (*supra*). Thus, the Court in *Liling* concluded that the plaintiff's allegations of fraud were insufficient to make a prima facie showing. The Court also rejected plaintiff's argument that it should ignore the fully executed partnership agreement that he belatedly discovered in his pos-

session, holding that plaintiff's "purported reliance on the defendants' assertions that the agreement was unenforceable is unjustifiable as a matter of law" (*supra,* at 726).

In contrast to *Liling*, here the fraud claim is quite specific. Fraud claims require their proponents to explain in detail the specific circumstances that constitute the fraud (CPLR 3016 [b]). To establish a claim of fraud, the proponent must allege representation of a material existing fact, falsity, scienter, deception and injury (*see, Lanzi v Brooks*, 54 AD2d 1057, *affd* 43 NY2d 778). Here, it is clear that plaintiffs knowingly made an affirmative misrepresentation that they never signed Waivers. This unassailable misrepresentation is documented by the January 13, 1995 letter from Greenberg to Thelma's former attorney, Bordelon, in which he "clarifies" his clients' position by affirmatively stating: "[M]y clients did not sign a waiver. Furthermore, they do not have, nor did they ever have, 'in hand', any signed waiver. Therefore, this imaginary waiver most certainly shall be 'ignored in reviewing this claim'." This assertion was a response to Bordelon's letter of January 10, 1995, in which he attempted to clarify whether Greenberg's position regarding the Waivers was that they had no legal effect or that they had never been signed. Furthermore, the misrepresentation contained in Greenberg's January 13, 1995 letter was echoed in the challenged Settlement Agreement, signed off on by plaintiffs, which included a statement that "[E]ach of the Sherman Children has denied ever signing any such instrument and has asserted that no such instrument waiving certain rights in the Sherman Estate exists." Since it is now undisputed that plaintiffs in fact did sign the Waivers, it is established that they misrepresented a material fact. Thus, unlike the *Liling* case, here we have sufficient allegations in support of a fraud claim.

Also in contrast to *Liling*, here, Thelma's reliance upon the misrepresentation was justifiable. Plaintiffs contend that since Bordelon knew or should have known that plaintiffs had executed the Waivers, and since his knowledge must be imputed to his client, Thelma was not justified in relying upon Greenberg's statement that his clients had not executed waivers. However, even if we impute to Thelma the knowledge that plaintiffs signed the Waivers, without the physical documents in hand, and in the face of their affirmative denial of ever having signed such documents, the viability of her claim would have been severely compromised. Consequently, settlement was certainly advisable. Her justifiable reliance was not simply upon the truth of their denials, but upon the fact that they

would continue to make that assertion in the context of the action, which assertion would be difficult to overcome in the absence of the Waivers themselves.

We further reject plaintiffs' contention that the Waivers were invalid in any case, and that therefore Thelma was not damaged by the misrepresentation because she could not have prevailed in the prior action. Plaintiffs incorrectly assert that their Waivers were not valid because only their parents could modify the terms of their Separation Agreement so as to change the children's rights to inherit the contemplated stock. However, the Waivers were perfectly valid. Absent public policy considerations not applicable here, a person may knowingly waive any right (see, Hadden v Consolidated Edison Co., 45 NY2d 466, 469). Plaintiffs were not modifying the Separation Agreement that gave them this inheritance right, they were renouncing that right, and their renunciation was legally binding without either parent's agreement.

Finally, as to whether an award of sanctions is justified here, the "frivolous conduct" proscribed by 22 NYCRR 130-1.1 includes assertions of "material factual statements that are false" (22 NYCRR 130-1.1 [c] [3]). Plaintiffs argue that the statements made by Greenberg in unsworn letters to his opposing counsel in connection with prior litigation were not shown to have been knowingly false, and may not form the basis for the imposition of sanctions. They also continue to emphasize that since Bordelon should have known that Greenberg's clients had signed waivers, he could not have properly relied upon Greenberg's assertions.

However, notwithstanding any shortcomings in Bordelon's conduct in the prior action, Greenberg and his clients clearly made definitive statements of fact that were shown to have been false when made. The question of whether plaintiffs' attorney knew, or should have known, that these statements were false, was properly left for a fact-finding hearing under section 130-1.1.

Nor can the distinction between sworn and unsworn falsehoods serve to avoid the imposition of sanctions here. We reject the suggestion that there are no ramifications for inclusion of a falsehood in a letter to opposing counsel. Nothing in section 130-1.1 (c) (3) limits its application to sworn false statements. Indeed, while this is not a disciplinary proceeding, it is noteworthy that under appropriate circumstances, the disciplinary rules may apply to misrepresentations made by attorneys in unsworn documents. For instance, it is a violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3

[a] [4]) to falsely assure a client that her lawsuit is proceeding appropriately when in fact the attorney failed to timely commence an action (*see*, *Matter of Hirsch*, 231 AD2d 358, 360). Nothing in the ethical prohibition against engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, or engaging in conduct that is prejudicial to the administration of justice, limits its application to deceits contained in sworn documents (*see*, Code of Professional Responsibility DR 1-102 [A] [4], [5], [7] [22 NYCRR 1200.3 (a) (4), (5), (7)]), and logically, there is no reason to so limit section 130-1.1.

Finally, plaintiffs' contention that Thelma or her attorney should be sanctioned under 22 NYCRR 130-1.1 (c) (1) is without merit. Concur—Rosenberger, J. P., Tom, Mazzarelli, Saxe and Buckley, JJ.