[766 NYS2d 33]

In the Matter of GEORGE R. OSBORNE (Admitted as GEORGE RICHARD OSBORNE, JR.), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 23, 2003

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill* (*Naomi F. Goldstein* of counsel), for petitioner.

*Robert E. Goldman* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent George R. Osborne was admitted to the practice of law in the State of New York by the Second Judicial Department on June 22, 1960, under the name George Richard Osborne, Jr. At all times relevant to this proceeding, he has maintained an office for the practice of law within the First Department.

In April 2001, the Departmental Disciplinary Committee initiated a proceeding against respondent, pursuant to the doctrine of collateral estoppel, based on the findings made in three unrelated civil cases in which monetary sanctions were imposed on him for pretrial misconduct that exhibited disdain for the court. In the first case, *Douglas v Victor Capital Group* (1997 WL 716912, 1997 US Dist LEXIS 18115 [SD NY, Nov. 17, 1997, 96 Civ 6557]), United States Magistrate Judge Andrew Peck issued an opinion "necessitated by the inability of counsel for plaintiff, George R. Osborne, to follow court scheduling orders" (1997 WL at *1, 1997 US Dist LEXIS at *1). Magistrate Judge Peck sanctioned respondent $250 for his "extremely cavalier" attitude toward deadlines throughout the case, adding that this was not the first time respondent had had "this problem" and referring to a 1991 case in which respondent was publicly censured for failing to file briefs on time (*Heyman v Massler*, 1991 WL 125259, *1, 1991 US Dist LEXIS 8721, *3 [SD NY, June 28, 1991, 84 Civ 888] [Senior Judge Bernard Newman, US Court of International Trade, sitting as US District Judge by designation]).

In the second case, *Colton, Hartnick, Yamin & Sheresky v Feinberg* (Index No. 2948/91 [Sup Ct, NY County]), Justice Lorraine Miller imposed a sanction of $2,500 against respondent and his client on November 17, 1997, after four unexcused absences by respondent, and imposed a second sanction on them on February 17, 1998, in the amount of $5,000, for "flouting this court's several orders," "obstructing the resolution of the litigation and treating the court's processes with manifest contempt," and "engag[ing] in a deliberate campaign of obfuscation and utter disrespect for court orders, professional responsibility, and civilized behavior." This Court affirmed Justice Miller's February 1998 order, which struck respondent's client's pleadings for his repeated and deliberate disobedience of court orders pertaining to disclosure (*Colton, Hartnick, Yamin & Sheresky v Feinberg*, 261 AD2d 238, 239 [1999]).

In the third case, *SS&J Morris v I. Appel Corp.* (2000 WL 1028680, 2000 US Dist LEXIS 10381 [SD NY, July 26, 2000, 97 Civ 6938, 97 Civ 8230]), United States Magistrate Judge Douglas Eaton found that respondent and his client had invoked the federal rule permitting a party to instruct a witness not to answer (Fed Rules Civ Pro rule 30 [d] [3] [now (4)]) in bad faith (2000 WL at *2, 2000 US Dist LEXIS at *4) and that "[t]hrough their speeches, interruptions, refusals to answer and instructions not to answer, they caused a delay of almost two months . . . and caused the entire deposition to consume . . . about twice as much time as it should have [and] to be much nastier than it should have been" (2000 WL at *6, 2000 US Dist LEXIS at *16). Magistrate Judge Eaton imposed sanctions against respondent and his client in the amount of $29,692.37 (*SS&J Morris v I. Appel Corp.*, 2000 WL 1576972, 2000 US Dist LEXIS 15389 [SD NY, Oct. 23, 2000, 97 Civ 6938, 97 Civ 8230]).

This Court granted the Committee's motion (M-2229) seeking a finding that respondent had committed professional misconduct and appointing a Referee to conduct a hearing to consider any evidence in mitigation or aggravation and to recommend an appropriate sanction. At the conclusion of the hearing, the Referee found that, while respondent's conduct in any one of the three cases discussed above arguably did not rise to a level at which professional discipline might have been appropriate, "it is the *pattern* of conduct which is found to amount to unprofessional conduct, and while there are some circumstances which serve to soften the image, there remains an unmistakable picture of conduct prejudicial to the administration of justice, reflecting adversely on [respondent's] ability as a lawyer and harmful to his client" (emphasis in report).

The Referee found that respondent's attempt at mitigation "served rather to reinforce the conclusion of the Appellate Division, that he has adopted a course of conduct inimical to the administration of justice and the image of our profession." Respondent "continually ignored the ruling that he could not reargue the issues already determined adversely to him by the Appellate Division" and regularly offered testimony that there was no misconduct or that the factual predicates for the findings of misconduct were false. The Referee also noted that respondent's manner of complying with the schedule for exchanging posthearing memoranda with the Committee was "yet another example of failure to meet deadlines."

On the other hand, the Referee cited "extensive periods of practice without a disciplinary record in a career devoted to ad-

versarial litigation where antagonizing relationships are difficult to avoid." He credited respondent with a "trouble free" record since 1974, when respondent was suspended for three years after he was found to have violated the prohibition against private practice while employed as Chief Counsel of the Coordinating Committee on Discipline, the Departmental Disciplinary Committee's predecessor (*Matter of Osborne*, 45 AD2d 113 [1974], *appeal dismissed* 36 NY2d 873 [1975]). In imposing the suspension, this Court stated that "we would, were it not for the findings and recommendation of the Referee, and certain mitigating factors disclosed by the record, disbar the respondent" (at 115). The Referee commented that it was "arguably significant that in [the 1974] matter the respondent in his defense, as described by the court in its opinion, showed a readiness to test the outer limits of rules governing his conduct." However, the Referee pointed out that there had been no claim of evidence of moral turpitude in any of the matters he had reviewed in the instant proceeding and he recommended, instead of the three-year suspension recommended by the Committee, a suspension of one year.

A Hearing Panel subsequently recommended modifying the Referee's proposed sanction to provide for a three-month suspension, observing that the courts that imposed sanctions on respondent declined to refer his conduct for further disciplinary action and that respondent is a 70-year-old solo practitioner with one disciplinary incident, which occurred 28 years ago, in 43 years of practice. Noting the conduct on which the Referee commented, which mirrored the conduct for which respondent was sanctioned, and respondent's demeanor before the Panel, the Panel recommended the three-month suspension so that respondent would not be precluded from returning to the practice of law.

The Departmental Disciplinary Committee now seeks an order, pursuant to 22 NYCRR 605.15 (e), disaffirming in part the Hearing Panel's report, confirming the findings of fact and conclusions of law set forth in the Referee's report, and imposing a one-year suspension as recommended by the Referee. Respondent seeks to disaffirm the Panel's report and argues that no suspension is warranted.

The record amply supports the Referee's findings of fact and conclusions of law. That respondent engaged in a "pattern" of misconduct, for example, is demonstrated in the findings of the three different courts in the aforementioned cases. Also demon-

strated is that court warnings, opportunities to comply and even monetary sanctions did not deter him from engaging in such misconduct. We therefore agree that respondent should be suspended from the practice of law. However, a one-year suspension could mean the end of respondent's career, which we do not believe is warranted, while a three-month suspension is too lenient in view of the absence of mitigation, respondent's stubborn attempts at relitigation in the guise of mitigation, and his conduct during this proceeding, which, as the Panel observed, "mirrored the conduct for which he was sanctioned." We find that a suspension of six months is the appropriate sanction.

Accordingly, the Committee's motion for an order confirming the findings of fact and conclusions of law set forth in the Referee's report should be granted. The Hearing Panel's recommendation that this Court impose a one-year suspension should be disaffirmed and respondent should be suspended from the practice of law for a period of six months and until the further order of this Court.

BUCKLEY, P.J., NARDELLI, ROSENBERGER, ELLERIN and WILLIAMS, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of six months, effective November 24, 2003.