09-90098-am

—

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2010

(Decided: April 25, 2011)

Docket No. 09-90098-am

_____

In re Kristan Peters,

Attorney.

_____

For Kristan Peters:           Steven D. Ecker, Cowdery, Ecker, & Murphy, L.L.C., Hartford, CT.

Before: Cabranes, Sack, and Wesley, Circuit Judges.

**PER CURIAM**:

Kristan Peters, an attorney admitted to the bars of both New York and Connecticut,[1] and formerly a partner at the law firm of Dorsey & Whitney, appeals from an order of the Committee on Grievances for the United States District Court for the Southern

---

[1] Peters is registered in New York as "Kristan Peters" and in Connecticut as "Kristan Peters-Hamlin."

District of New York (the "Grievance Committee") suspending her from practicing before that court for a period of seven years. The Grievance Committee found that she had engaged in the following misconduct:

(1) instructing a junior attorney, Jordan Brackett, to deface transcripts in order to render them, under the guise of the attorney work-product privilege, unreturnable to the district court ("the Brackett allegation"); and

(2) violating a confidentiality order issued by the district court by filing, in a Massachusetts action, transcript excerpts encompassed by that order("the Confidentiality Order allegation").[2]

See In re Peters, 543 F. Supp. 2d 326, 331-34 (S.D.N.Y. 2008) (interim suspension order); In re Peters, M-2-238, doc. 125 at 3-4 (S.D.N.Y. Jun. 5, 2009)(disbarment order, based on the findings and reasoning of the interim suspension order); In re Peters, M-2-238, doc. 192 at 5 (S.D.N.Y. Aug. 6, 2009)(order reducing penalty from disbarment to seven-year suspension, based on mitigating factors).

---

[2] In the Grievance Committee's January 2008 order directing Peters to show cause why she should not be disciplined, she also was charged with "participat[ing] in a conference with the [district court] to adjourn a TRO hearing and discuss future depositions at a time when [Peters] knew that those depositions and the TRO hearing would not take place," and "cop[ying] transcripts and order[ing] additional copies of transcripts in intentional disregard of court orders." In re Peters, M-2-238, doc. 51 at 2 (SPA4) (S.D.N.Y. Jan. 30, 2008). However, since Peters's suspension was not based on those charges, they are not addressed here.

2

The Grievance Committee concluded that Peters's misconduct had violated: New York Disciplinary Rule ("DR") 1-102(a)(5), which prohibited conduct prejudicial to the administration of justice; DR 1-102(A)(4), which prohibited a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; and DR 7-106(A), which prohibited a lawyer from disregarding, or advising a client to disregard, a ruling of a tribunal made in the course of a proceeding.[3] *See Peters*, 543 F. Supp. 2d at 334-35; *Peters*, M-2-238, doc. 125 at 4.

In her brief, Peters argues, *inter alia*, that the Grievance Committee's failure to hold an independent hearing, and its reliance on a prior sanctions hearing conducted by Judge Baer in the underlying litigation, violated her due process rights and the district court's local rules. She also argues that the two charges of misconduct now at issue do not, as a matter of law, support the Grievance Committee's imposition of discipline. Although this Court already has affirmed the underlying sanctions order entered by Judge Baer to the extent he reprimanded Peters, the two charges upon which the Grievance Committee's suspension is based were not addressed in that prior appeal, since this Court limited its review of Judge Baer's order to three other charges. *See Wolters Kluwer Fin.*

---

[3] Effective April 1, 2009, the New York Disciplinary Rules were replaced with the New York Rules of Professional Conduct ("RPC"). The text of DR 1-102(a)(5), DR 1-102(A)(4), and DR 7-106(A) can now be found in, respectively, RPC 8.4(d), RPC 8.4(c), and RPC 3.4(c).

*Servs., Inc. v. Scivantage*, 564 F.3d 110, 118-19 (2d Cir. 2009), *affirming*, *in part*, 525 F. Supp. 2d 448 (S.D.N.Y. 2007) (Judge Baer's sanctions decision). Except as discussed below, we assume the parties' familiarity with the underlying facts and procedural history of this case.

This Court's review of an original disciplinary order entered by a district court is governed by the abuse of discretion standard, although the issue of whether a disciplinary rule prohibits the conduct in question is reviewed *de novo*. *See In re Edelstein*, 214 F.3d 127, 130-31 (2d Cir. 2000). A district court has abused its discretion if its imposition of sanctions was based on "an erroneous view of the law or on a clearly erroneous assessment of the evidence," or "cannot be located within the range of permissible decisions." *Wolters Kluwer*, 564 F.3d at 113 (internal quotation marks omitted). However, "when the district court is accuser, fact finder and sentencing judge all in one," as was essentially the case here, this Court's review is "more exacting than under the ordinary abuse-of-discretion standard."[4] *Id.* at 113-14 (internal quotation marks omitted). Thus, even under the deferential abuse-of-discretion standard of review, this Court must be careful to "ensure that any [decision to impose sanctions] is made with restraint and

---

[4] Although we are not reviewing Judge Baer's reprimand decision, we nonetheless apply the "more exacting" abuse of discretion standard since the Grievance Committee relied on Judge Baer's sanctions proceeding and adopted his findings.

discretion." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999).

Because an attorney disciplinary proceeding is quasi-criminal in nature, the Due Process Clause entitles the charged attorney to, *inter alia*, adequate advance notice of the charges, and the opportunity to effectively respond to the charges and confront and cross-examine witnesses. *See In re Ruffalo*, 390 U.S. 544, 550-51 (1968); *Erdmann v. Stevens*, 458 F.2d 1205, 1209 (2d Cir. 1972) ("[A] court's disciplinary proceeding against a member of its bar is comparable to a criminal rather than to a civil proceeding.").

In examining the Grievance Committee's decision not to hold a full evidentiary hearing, this Court "consider[s] the private interest affected by the action of the [Grievance Committee] in following [Judge Baer's sanctions decision] without [holding] an [independent] evidentiary hearing, the risk of erroneous deprivation of that private interest, and the [Grievance Committee's] interest in foregoing an evidentiary hearing." *In re Jacobs*, 44 F.3d 84, 90 (2d Cir. 1994) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). This Court has held that a district court grievance committee's decision not to hold a full evidentiary hearing did not violate the charged attorney's due process rights when the risk of erroneous deprivation of the attorney's interest in practicing before the district court was "extremely low," and there was an "important public interest in not expending judicial resources on a

5

proceeding that would largely duplicate a prior . . . proceeding," given that the attorney "had made no showing that such a hearing would reveal an infirmity of proof or lack of due process in the [prior] proceeding or risk of grave injustice from suspending [the attorney] on the basis of [a prior] order." *Id.* at 90-91 (holding that a district court grievance committee's reliance on a state court's findings, without holding an independent hearing, did not violate the attorney's due process rights).

With respect to the Brackett allegation, an independent evidentiary hearing would not have been duplicative of Judge Baer's sanctions proceeding since, in that prior proceeding, Peters was not provided adequate prior notice of that allegation or adequate opportunity to respond and to cross-examine adverse witnesses. With respect to the Confidentiality Order allegation, although Peters had adequate notice and opportunity to respond to the allegation during the prior proceeding, the evidence concerning the allegation was not adequately developed during that prior proceeding so as to permit the Grievance Committee to forego an independent evidentiary hearing in the present matter. We therefore vacate the Grievance Committee's suspension order and remand the matter for the Committee to hold further proceedings consistent with our decision.

## I. **Brackett Allegation**

### A. **Collateral Estoppel, Res Judicata, and Law of the Case**

First, this Court never reviewed the particular charges on

6

which the Committee based its discipline. Instead, in the appeal from Judge Baer's sanction order, this Court stated that it "need only review a sampling of Peters's conduct to affirm the district court's imposition of sanctions," and then discussed three charges not now at issue. *Wolters Kluwer*, 564 F.3d at 116, 118-19. The Court then concluded as follows:

> Having reviewed these three instances, we see no need to consider the other sanctions for which the district court issued reprimands. No likely argument has been advanced as to why the other nineteen sanctions are defective, and because the sanctions are all non-monetary, the subtraction of one or another from the whole course of conduct would not alter the nature or tenor of the district court's rulings.

*Id.* at 119. Although the Court saw no "likely argument" concerning the sanctioned conduct presently at issue, the Court nonetheless made clear that appellate review had been limited to the sampling of conduct explicitly discussed in the opinion. We therefore disagree with the Grievance Committee's statements that "Judge Baer's conclusions regarding the incident involving Mr. Brackett . . . have been affirmed by the Second Circuit," *In re Peters*, M-2-238, doc. 193 at 5, and that "[t]he Second Circuit affirmed all of the sanctions on Ms. Peters," *id.* at 7. Thus, the Committee was incorrect to rely on such preclusion doctrines as collateral estoppel and res judicata in finding that it need not hold its own hearing. *See Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 754 (2d Cir. 1996) ("It is a well-established principle of federal law that if an appellate court considers only

7

one of a lower court's alternative bases for its holding, affirming the judgment without reaching the alternative bases, only the basis that is actually considered can have any preclusive effect in subsequent litigation."); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986) ("[I]f an appeal is taken and the appellate court affirms on one ground and disregards the other, there is no collateral estoppel as to the unreviewed ground."); Restatement (Second) of Judgments § 27 cmt. o (1982).

The Committee also relied on the law of the case doctrine in finding that it need not hold its own hearing. The law of the case doctrine, although not binding, "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons," including, *inter alia*, "the need to correct a clear error or prevent manifest injustice." *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)). We need not address whether the present matter is the "same case" as Judge Baer's sanctions proceeding because, even assuming *arguendo* that the doctrine could apply, the present issues are sufficiently compelling to warrant revisiting the Brackett allegation. *See id.*

**B. Notice and Opportunity to Respond**

Second, this Court's due process analysis in *Wolters Kluwer* is of limited aid in the present appeal because the notice Peters received in Judge Baer's sanctions proceeding concerning the Brackett

8

allegation, and her opportunity to respond, differed significantly from the notice and opportunity to respond she had concerning the three charges discussed in this Court's *Wolters Kluwer* decision. As an initial matter, the Brackett allegation was not included in the defendants' sanctions motion, *see* Peters's App. ("App.") at A68-A100, although Judge Baer noted in his sanctions order that he had "specifically reiterated at the beginning of the hearings that the [district court] was only considering the same issues raised by [the] sanctions motion," *Wolters Kluwer*, 525 F. Supp. 2d at 452 n.8; *see also* App. at A287 (Letter from Judge Baer, copied to all attorneys, concerning sanctions hearing) ("The scope of the hearing will encompass the relief requested by Defendants in their motion for contempt, sanctions, and fees.")), A374 (similar statement by Judge Baer at beginning of the hearing). While that description of the scope of the sanctions hearing may not be controlling, since an attorney may receive adequate notice of a misconduct charge by means other than a sanctions motion served prior to the sanctions hearing, *see Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (explaining that due process requires only notice "of such nature as reasonably to convey the required information"), it does not appear, on the present record, that Peters received adequate notice of, and opportunity to respond to, the Brackett charge by any

means.[5]

The sanctions motion charged Peters with, *inter alia*, failing to deliver all deposition transcripts to the district court, in violation of Judge Baer's protective order, which required her firm to deliver all of the transcripts to him.  *See* App. at A73, A82-85.  Although the Brackett allegation was related to Peters's alleged intention to retain transcripts in violation of Judge Baer's order, the sanctions motion contained nothing that would suggest to a reasonable person that the Brackett allegation might be a basis for sanctions.  There is a simple explanation for this: the sanctions motion was signed and served on April 24, 2007, *see id.* at A100; S.D.N.Y. Docket 07-cv-2352, Doc. 124, item 200 at 143 (Cert. of Service),[6] while the Brackett allegation concerned an event that occurred on April 26, 2007, *see* App. at A714-15 (Brackett Decl.).

---

[5]  At the beginning of the hearing, Judge Baer stated:

> Any sanctions or contempt imposed, should that come to pass, will be based solely on the conduct of this matter, although I might add that knowledge by [the] plaintiff[] of any prior improprieties of Ms. Peters at the time it engaged her and initiated this lawsuit may be pertinent.

App. at A374.  Although this statement arguably warned Peters that additional charges were possible, it did not constitute notice of the Brackett allegation.

[6]  A number of sealed documents that are part of the district court record for the *Wolters Kluwer* action were placed on a single disc that was filed as document 124.  In the present decision, a citation to "Doc. 124, item x" refers to the document numbered "x" on the disc filed as document 124.

The Brackett allegation did not surface during the sanctions proceeding until September 4, 2007, the third day of the five days of hearings before Judge Baer, when a witness testified that he had been told that Peters had directed Brackett to write "attorney notes" on clean copies of deposition transcripts. *See id.* at A657-59. However, the focus at that point remained whether the law firm or Peters had possessed transcripts that previously should have been delivered to the court. *See generally id.* at A655-72. In fact, Peters's cross-examination of that witness barely touched on his mention of the Brackett allegation — in that regard, Peters simply asked if the witness had himself heard the conversation between Brackett and Peters, and whether the witness had participated in the decision not to call Brackett as a witness in the sanctions hearing, at which point Judge Baer stated, "We can fix that." *Id.* at A670. At that time, it appears that the Brackett allegation was regarded as evidence relevant to whether Peters intended to deliver all of the transcripts covered by the protective order to the district court, and not as a separate charge of misconduct.

By letter dated September 5, 2007, Judge Baer requested Brackett to submit a declaration regarding his involvement in the litigation, "particularly regarding his involvement in activities relating to the allegations that he [had been] directed to alter transcripts provided to [the district court]." Doc. 124, item 409. Judge Baer also stated that, after reviewing Brackett's declaration, he would decide

11

if Brackett would be called as a witness. *Id.* The declaration itself is dated September 9, 2007, *see* App. at A716; it was emailed to Judge Baer's law clerk and Peters's attorney, among others, on September 10, 2007, *see* Doc. 124, item 413; and both Peters and her attorney acknowledged receipt of the declaration on that day, *see id.* at items 414, 416; App. at A719, A767.

Upon Peters's receipt of the Brackett declaration, one arguably might conclude that she was then on notice that the transcript defacement allegation constituted a disciplinary charge that could subject her to sanctions. However, Judge Baer did not explicitly characterize it as such, and other attorneys intimately involved in the proceedings apparently still did not recognize it as a charge. After Peters responded to Brackett's declaration by requesting an opportunity to cross-examine Brackett and several other persons, *see* Doc. 124, item 414, an opposing attorney objected to Peters's "last-ditch and blatant effort to protract [the] proceedings," and listed the six issues that the attorney believed were before the district court, a list which did not include the Brackett allegation, *see id.* at item 420. Despite these ambiguities, for purposes of this decision, we assume that Peters had notice of the Brackett charge as of September 10, 2007, but find that, for the reasons that follow, she nonetheless did not have adequate time to respond to that charge.

It is not clear how much time Peters had, after receipt of the Brackett declaration on September 10, to prepare for her cross-

12

examination of Brackett on September 12. While Peters may have had some preparation time on September 10, she and her counsel were occupied for substantial portions of the next two days by the hearing itself: on September 11, the hearing ran from approximately 10:35 a.m. to approximately 8:00 p.m., *see* App. at A718, A796, and, on September 12, it began at 9:30 a.m., *see id.* at A804. Additionally, any preparation time Peters may have had on September 10 and 11 also had to cover four witnesses other than Brackett who were to testify on September 11 and 12, and Peters's own testimony on September 11. Peters also may have spent some of her available time preparing for several other possible witnesses who ultimately did not testify. *See id.* at A638 (Peters requesting testimony of three attorneys), A719 (plaintiff's counsel noting possible need to call three defendants), A827 (Peters requesting testimony of five witnesses). However, even if we assume that Peters had to prepare only for four potentially adverse witnesses, and not for her own testimony, those four witnesses were relevant to a number of the charges in the sanctions motion, and not simply the Brackett allegation.

Furthermore, Judge Baer informed the attorneys on September 11 that the September 12 hearing would run from 9:30 a.m. to 11:00 a.m., *see id.* at A801, with Brackett taking "no more than 15 or 20 minutes," *id.* at A775, clearly requiring Peters to prioritize her preparation time, presumably giving greater priority to the witnesses and allegations directly relevant to the known charges. But, as

13

discussed above, it is not clear when the Brackett allegation became a known "charge" — one that independently exposed her to possible sanction in that proceeding — or, if it was a known charge by September 10, a charge important enough to warrant reallocating scarce resources and time away from the issues that, up to that point, had been treated as the central issues.

Since the Brackett allegation was, at the very least, an important basis for the seven-year suspension, we assume that Peters would have cross-examined him on it if she had had unlimited time for cross-examination. *See id.* at A732 (Peters requesting another witness to provide the "exact words" used by Brackett "for impeachment purposes"), A887 (Mem. of Law in Supp. of Mot. to Compel Discovery (filed Sept. 24, 2007) (objecting to, *inter alia*, the "truncated opportunity for cross examination" of witnesses "such as Jordan Brackett who have brought what [Judge Baer] has indicated [he] deems the most serious allegations against Peters")). Of course, no lawyer is permitted unlimited cross-examination; rather, "[t]he scope and extent of cross-examination are generally within the sound discretion of the trial court, and the decision to restrict cross-examination will not be reversed absent an abuse of discretion." *United States v. Rosa*, 11 F.3d 315, 335 (2d Cir. 1993); *see also United States v. Elfgeeh*, 515 F.3d 100, 125 (2d Cir. 2008). Although the trial court may, under proper circumstances, impose a time limit on cross-examination, *see United States v. Casamento*, 887 F.2d 1141,

14

1173 (2d Cir. 1989) (upholding time limit when defense counsel had adequate time to elicit evidence of witness's motive for testifying falsely and counsel had not identified other areas of inquiry they wished to pursue), such limits should be imposed with caution, *cf. United States v. Vest*, 116 F.3d 1179, 1187 (7th Cir. 1997)(stating that a trial judge's "rigid adherence to time limitations" would prevent the judge from making the necessary "particularized judgment" as to the proper length of cross-examination).

Here, we are not directly reviewing Judge Baer's decision to limit Peters's cross-examination of Brackett; instead, we are reviewing the Grievance Committee's reliance on the procedures employed by Judge Baer, which included that limitation. That distinction may be highly relevant here since Judge Baer only imposed a reprimand, and specifically declined to suspend Peters, finding it more appropriate to refer Peters to the Grievance Committee "because of the procedural protections inherent to that process." *Wolters Kluwer*, 525 F. Supp. 2d at 550. It is not known which specific "procedural protections" Judge Baer had in mind; however, that statement suggests that the very judge who conducted the hearing did not believe that the procedures employed were necessarily sufficient for purposes of a suspension.

During the September 12, 2007 hearing, Judge Baer stated that Peters would have fifteen minutes to cross-examine Brackett, *see* App. at A814, and then kept a close eye on the clock, announcing when only

15

five minutes remained, *id.* at A822, and when only two minutes remained, *id.* at A823, and stopping Peters mid-question,[7] *id.* The transcript defacement issue, which was not covered by Peters's cross-examination, was first mentioned during opposing counsel's redirect examination of Brackett, with Judge Baer asking the only question relevant to the present proceeding — soliciting from Brackett that he did not believe that Peters's statement that he should scribble on the transcripts was said in jest. *Id.* at A824. After that, Judge Baer immediately excused Brackett from the stand. *Id.*

Under these circumstances, we do not agree that Peters "'chose not to directly cross-examine Brackett about the [defacement allegation].'" *In re Peters*, 543 F. Supp. 2d at 332 (quoting *Wolters Kluwer*, 525 F. Supp. 2d at 521 n.277). Instead, the record strongly suggests that Peters simply ran out of time as a result of the strict time limit imposed by Judge Baer. Furthermore, although the Grievance Committee noted that the Brackett cross-examination "spann[ed] 19 pages of the transcript" and that one of Peters's lawyers was present, *id.*, neither of those facts suggests that Peters

---

[7] Peters's questioning of other witnesses was similarly truncated. *See, e.g.*, App. at A813 (Peters: Your Honor, I must tell the Court that I have some critical questions [remaining for Mr. Herman]." Judge Baer: "Well you should have gotten them out ... in the time table that I ... have prescribed"), A818 (stating, that Peters, in questioning Eric Epstein, had "had [her] 10 minutes"). Further, at the termination of the sanctions hearing, Peters was denied the opportunity to call two additional witnesses who, she stated, could attest that she had not opposed returning transcripts to the district court. *See id.* at A827.

16

had adequate time to question Brackett on the defacement issue, given that his declaration covered a number of topics relevant to several of the misconduct charges.

Additionally, the limited advance notice of the Brackett allegation severely restricted Peters's ability to investigate and obtain impeachment evidence relevant to that charge, beyond the evidence and witnesses already scheduled for presentation to Judge Baer.  We do not, however, comment on whether Peters was prejudiced by that particular limitation, which may be mooted in whole or part by the further proceedings to be held by the Grievance Committee.

In light of the "more exacting" standard that applies to this matter, *Wolters Kluwer*, 564 F.3d at 113-14 (quoting *Perez*, 347 F.3d at 423), we conclude that Peters was denied due process with respect to the Brackett allegation and vacate the Grievance Committee's suspension order to the extent it was based on that allegation. However, the Grievance Committee is free, on remand, to hold further proceedings concerning that charge, providing Peters with sufficient opportunity to respond and cross-examine adverse witnesses.  In those further proceedings, the Grievance Committee should decide, in the first instance, what evidence Peters should be permitted to present in her defense, and, if the Grievance Committee declines to consider particular proffered evidence, it should provide detailed findings in support of that decision.  For example, regarding the Committee's finding that Peters had unreasonably delayed in presenting certain

17

evidence from Peters's former secretary, *see In re Peters*, M-2-238, doc. 193 at 6 (SPA-45) (S.D.N.Y. Aug. 6, 2009), it is not clear to us what prior opportunity Peters had to present that evidence, or how it substantially altered her position. However, since the scope of any new proceedings will be decided by the Grievance Committee, any further discussion of potential evidence would be speculative.

We also decline to consider, at this juncture, whether Peters's suspension may be based on a conclusion that Peters's statements to Brackett evidenced, at a minimum, a "reckless disregard of the prohibitions of the New York Disciplinary Code." *In re Peters*, 543 F. Supp. 2d at 332; *see* Peters's Br. at 72-77. If that issue remains relevant on remand, Peters should present her argument on that point to the Grievance Committee for its consideration in the first instance.

## II. Confidentiality Order Allegation

### A. Notice of Charge

We reject Peters's argument that she had inadequate notice of the Confidentiality Order allegation prior to Judge Baer's hearing.[8] *See* Peters's Br. at 55-57. First, Peters's argument that this allegation was not "included in any way, shape or form in the Sanctions Motion," *id.* at 55, is incorrect. Although the defendants

---

[8] The confidentiality order is entitled "Confidentiality Stipulation and Protective Order," *see* App. at A43, but is usually referred to in the record as either the "confidentiality order" or the "protective order." In this decision, we refer to it as the "Confidentiality Order."

18

did not, in a separate count, charge Peters with violating the Confidentiality Order, that allegation was made in several sections of the motion:

(1) as part of the charge that Peters had improperly refused to return discovery and had attempted to use discovery from the New York action in the Massachusetts action, *see* App. at A84 ("The unmistakable inference from plaintiff's conduct is that it intends to use the discovery it tricked the [defendants] into providing in this matter in the Massachusetts Action or otherwise, for its own improper benefit. . . . Now that the New York action has concluded, the *only* reason for [plaintiff's counsel's request for leave to share transcripts with its client] is to misappropriate defendants' information, either in the Massachusetts Action or for plaintiff's anti-competitive business purposes. Meanwhile, the Complaint in the Massachusetts Action . . . clearly utilizes information gleaned from the depositions in this case, in further violation of the Confidentiality Order issued in this case." (emphasis in original)), A82-83 (stating that, after the plaintiff argued that "plaintiff needed to retain a copy of the [discovery] documents for the Massachusetts Action," the district court "indicated that the plaintiff would have to take discovery anew in any such action and ordered plaintiff to return all discovery to the Court. . . . This directive also was consistent with the Confidentiality Order issued in the case, which unambiguously prohibited the use of material marked CONFIDENTIAL or HIGHLY CONFIDENTIAL in connection with any other proceeding." (citations omitted));

(2) as part of the request that the district court bar the use in any other action of any materials covered by the Confidentiality Order, *see id.* at A95 ("Plaintiff and its counsel breached the [Confidentiality] Order's express prohibition on using discovery information in other cases by utilizing information gleaned from Attorneys' Eyes Only depositions in the Massachusetts Complaint and necessarily sharing it with their Massachusetts counsel. The Court should thus enforce the [Confidentiality] Order and bar plaintiff, its affiliates, its employees, and its counsel, from using discovery from this case in the Massachusetts Action.");

(3) as part of the request that plaintiff's counsel be

disqualified from prosecuting the Massachusetts action, *see id.* at A96 ("Pursuant to the [Confidentiality] Order . . ., the parties were required to treat confidential information or information exchanged on an 'Attorneys Eyes Only' basis as 'Protected Material,' as defined therein. As such, this material was ordered 'not to be used ... in any other litigation proceeding.' [Confidentiality] Order ¶ 7(a) at 11. Despite this [Confidentiality] Order, plaintiff's counsel has already shown its willingness to use such information in the Massachusetts Action."); and

(4) as part of their argument that the plaintiff should be held in civil contempt, *see id.* at A99 (stating that plaintiff's Massachusetts complaint "utiliz[ed] information obtained in discovery in this action designated as 'Attorneys' Eyes Only,' despite this Court's [Confidentiality] Order on April 12, 2007, which provides, *inter alia*, that material so designated 'shall not be used ...in any other litigation proceeding.' Protective Order ¶ 7(a) at 11." ).

Through the above-noted portions of the defendants' sanction motion, a reasonable person would have been on notice that the Confidentiality Order allegation, if proved, could lead to sanctions. *See Mullane*, 339 U.S. at 314; *In re Jacobs*, 44 F.3d at 90. Peters herself appears to have reached that very conclusion as of May 24, 2007, when she signed an affidavit and a memorandum of law in support of her firm's opposition to the sanctions motion. *See* App. at A122-64 (Mem. of Law), A165-237 (Peters Aff.). In that affidavit and memorandum, Peters explicitly treated the Confidentiality Order allegation as an asserted ground for sanctions. *Id.* at A155-64, A232-37. The relevant portion of the memorandum begins as follows:

Defendants contend that sanctions are warranted in this case due to Plaintiff's use of the deposition transcripts from the New York Action, which Defendants had designated

20

as "Attorneys' Eyes Only," in motion papers filed under seal in the Massachusetts Action. Defendants assert that this use of the transcripts constituted a violation of the Confidentiality Order warranting sanctions. Dorsey strenuously opposes this grounds [sic] for sanctions.

*Id.* at A155.

In her brief, Peters argues that "the Sanctions Motion could not have included the Confidentiality Order Allegation, because the transcript excerpts were filed in Massachusetts <u>after</u> the Sanctions Motion was delivered to Dorsey's offices on April 24, 2007." Peters's Br. at 55 (emphasis in original). However, the allegations in the sanctions motion concerning violation of the Confidentiality Order were broad enough to encompass both violations that had already occurred and violations that were anticipated. *See* App. at A84 ("The unmistakable inference from plaintiff's conduct is that it intends to use the discovery . . . in the Massachusetts Action or otherwise[.]"). In any event, a reasonable person could not read the defendants' request for sanctions based on the prior filings in Massachusetts violating the Confidentiality Order without realizing that similar subsequent filings in Massachusetts would likely also be at issue. Additionally, a defense against sanctions for the post-April 24 filings in Massachusetts did not require different preparation than a defense against sanctions for the pre-April 24 filings — the primary issue was not whether particular filings were improper, but whether the Massachusetts action was the same action as the New York action for purposes of the Confidentiality Order.

21

Peters also received adequate advance notice of the charge through the district court's May 2007 order, in which the district court made clear that the Confidentiality Order allegation constituted a ground for sanctions that would be considered during the sanctions proceeding. *See Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 07-cv-2352, 2007 WL 1498114, at *9 (S.D.N.Y. May 23, 2007)("Plaintiff's counsel also suggested that following Plaintiff's voluntary dismissal, this Court's repeated orders to return discovery forthwith concomitantly modified the [Confidentiality] Order and granted her the ability to use transcripts of these 'attorneys' eyes only' depositions in the Massachusetts action. Such a contention strains credulity. I will address Plaintiff's actions, however, in a future opinion regarding Defendants' motion for contempt and sanctions, once such motion is fully briefed. . . . I will decline, at this time, to direct Plaintiff to redact from its filings in the Massachusetts action the 'attorneys' eyes only' transcripts of depositions taken in this action. . . . I will reserve decision on that sanction, as well as the more serious sanctions, including contempt, requested by Defendants. . . . These sanctions, as well as the branch of Defendant's motion that seeks disqualification of Plaintiff's counsel from the Massachusetts action, will abide the fully briefed motion and any hearings that are warranted." (internal citations and footnote omitted)).

Thus, Peters had ample notice of this charge prior to the

22

commencement of Judge Baer's sanctions proceeding.

## B.   The Confidentiality Order Was Violated

Although we do not find the Confidentiality Order to be, in all relevant respects, "crystal clear," *In re Peters*, 543 F. Supp. 2d at 333, we conclude that it barred the use, in the Massachusetts action, of New York discovery materials covered by the order.

The Confidentiality Order states, in various provisions, that it governs the handling of confidential documents in "this action" (used at least nineteen times), "the action" (used once), "this lawsuit" (used twice), "the above-entitled litigation" (used thrice), "this litigation" (used once), "the litigation" (used once), and "this case" (used once).[9]   App. at A43-47 (Confidentiality Order). The order also references "these actions" and "each action," *id.* at A53, A57, which appear to be errors and, in any event, are not relevant to the present issue.   Although use of these different phrases introduced a degree of ambiguity, the context makes apparent that all of these phrases were meant to be synonymous and refer to the same legal proceeding.   However, we agree with Peters that such phrases may, depending on the circumstances, refer to a group of separate, but related, legal proceedings before more than one court

_____

[9]   According to the Grievance Committee, "[t]he Confidentiality Order says several times that protected material shall not be used in any litigation other than the captioned proceeding." *In re Peters*, 543 F. Supp. 2d at 333 (emphasis omitted).   However, while the order does refer to "the above-entitled litigation," it does not use the phrase "the captioned proceeding."

23

or judge, rather than a single action with a single docket number in a single court.  Since these phrases are not defined in the order, and are susceptible to different definitions, most of them are of little use in interpreting the scope of the order.

We focus on two portions of the order.  First, paragraph 4 of the order contains the following language:

> (b) Access to Confidential Information.  In the absence of written permission from the Producing Party or Designating Party, as applicable, or an order of the Court, any Protected Material consisting of or containing CONFIDENTIAL INFORMATION shall be used solely for purposes of the prosecution and defense of the above-entitled litigation[.]

Confidentiality Order ¶ 4(b).  Paragraph 4(c)is identical to 4(b), except that the phrase, "ATTORNEYS' EYES ONLY INFORMATION," is used in place of "CONFIDENTIAL INFORMATION."  Although one can argue over the precise meaning of "above-entitled litigation," there is no plausible definition of that phrase that would encompass both the New York action and the Massachusetts action.  "Above-entitled" refers to the "title" appearing on the first page of the Confidentiality Order itself; however, every conceivable part of that litigation "title" differs from the comparable portion of the Massachusetts action's "title": (a) the names of the parties differ, in that the Massachusetts action involved one additional plaintiff and one additional defendant; (b) the name of the court differs; and (c) the docket number differs.

Second, after defining "Court" as referring to the United States District Court for the Southern District of New York, *see*

24

Confidentiality Order ¶ (2)(l), the order states that: the "Court" may overrule a party's confidentiality designation, *id.* ¶ 4(a); the "Court" may permit the use of confidential material for purposes beyond the "above-entitled litigation," *id.* ¶ 4(b)-(c); "Court" employees owe no duty to the parties to maintain the confidentiality of documents filed with the "Court," *id.* ¶ 6(a); applications and motions to the "Court" appending confidential materials are to be filed under seal with the "caption of this case" appearing on the outside of the envelope, *id.* ¶ 6(b); the parties may move the "Court" to resolve disputes over the sealing of documents, *id.* ¶ 6(c); the party challenging a confidentiality designation may seek relief from the "Court," *id.* ¶ 8; and "[t]he Court shall retain jurisdiction, even after termination of this lawsuit, to enforce this Order and to make such amendments and modifications to this Order as may be appropriate," *id.* ¶ 13. These procedures and remedies, limited exclusively to the Southern District of New York, would make no sense if the order were read as (a) permitting any party, without leave, to file confidential documents in any other court, and/or (b) giving the Southern District authority over filings and other proceedings in other courts. The order clearly anticipates that the Southern District, and no other court, would control all matters of confidentiality covered by the order. An essential component of that control is the requirement that confidential documents be used only

in that case in that court.[10]

To the extent that Peters argues that the Confidentiality Order was orally modified by Judge Baer in some fashion relevant to the present issue, *see* Peters's Br. at 88-90, we reject the argument. Although Judge Baer addressed the treatment of discovery materials on several occasions, Peters has not cited any oral order, or comment, altering any provisions governing the filing of documents in any other litigation or court. We agree with the Grievance Committee that Judge Baer's instruction that Peters's firm could "keep" certain transcript excerpts did not alter the Confidentiality Order's bar on the *use* of those excerpts elsewhere, including in Massachusetts. *See In re Peters*, 543 F. Supp. 2d at 334.

Thus, Peters's submission of confidential materials to the Massachusetts court, without the prior leave of Judge Baer, violated the Confidentiality Order.

## C. Proof of Culpable Mental State

Although Peters violated the Confidentiality Order, an attorney's violation of a court order does not, by itself, necessarily constitute sanctionable misconduct. To be sanctionable,

---

[10] In her brief, Peters argues that the provision of the order preserving the right "to seek judicial modification or amendment of th[e] Order" permitted the parties to seek relief from a court other than the Southern District of New York. *See* Peters's Br. at 87 (quoting Confidentiality Order ¶ 9). Even if that interpretation is accurate, that provision did not override, and no other court ever modified, the provisions of the Confidentiality Order limiting the use of confidential material.

26

the attorney's violation must be accompanied by a culpable state of mind. *See, e.g.,* ABA Standards for Imposing Lawyer Sanctions, R. 6.21-6.24 (1986, amended 1992)(outlining range of sanctions for violating a court order or rule, depending on the lawyer's mental state and other factors); *In re Ryan*, 189 A.D.2d 96, 104 (1st Dep't 1993) (stating that "venal intent" is element of DR 1-102(A)(4)); *In re Cohn*, 194 A.D.2d 987, 990-91 (3d Dep't 1993)(stating that "venal intent" is "apparent element" of DR 1-102(A)(4) and holding that, although venal intent was lacking, "the same specifications ... supported charges of conduct prejudicial to the administration of justice involving misstatements in official documents misleading to judicial and other governmental agencies"). For the following reasons, we find that, on the present record, there is insufficient evidence that Peters acted with a culpable state of mind when she violated the Confidentiality Order.

First, the record created by Judge Baer does not make clear the degree of Peters's familiarity with the Confidentiality Order during the relevant time period. The record contains evidence, presented by Peters, that: other attorneys in Peters's firm had taken the lead in negotiating that order; the order had been issued by the district court on April 12, 2007; Peters had left the country the following day and did not have a copy of the order during her time abroad; she had not reviewed the order prior to her departure (although she had discussed it briefly with others); and she had relied on the advice

27

of other attorneys in her firm as to the order's requirements. *See* App. at A792, A907, A923-24; *see also* A840 (Brackett research email dated Apr. 19, 2007) ("I think that we can construe the Massachusetts Action as a continuation of the previous matter.").

Zachary Carter and Jonathan Herman, two of the attorneys upon whom Peters claims to have relied, *see id.* at A769, A811, testified that they had not read the Confidentiality Order during the relevant time period, *see id.* at A727, A731, A733, A811. However, Herman, who had been assigned by the firm to supervise Peters's conduct of the litigation, *see id.* at 731, 804, had asked Carter on April 24, apparently on Peters's behalf, whether use of transcript pages from the New York action in an exhibit to an anticipated Massachusetts filing would violate "any existing court order of [Judge] Baer," *id.* at A846. In response, Carter advised that, although there was an outstanding motion requesting the return of transcript pages, republishing them in the exhibit would be "fair game." *Id.* According to Carter's testimony, however, he was not familiar with the Confidentiality Order at the time he gave that advice, as "the only orders that [he] had been . . . exposed to[] were those that had been issued" from April 16 through the time he gave that advice. *Id.* at A731. The record does not indicate whether Peters knew, or should have known, the limited nature of Carter's advice.

As for Marc Reiner, Deidre Sheridan, and Brackett, the Dorsey attorneys who Peters alleged were the most familiar with the

28

Confidentiality Order, *see id.* at A792, A907, A923-24; *cf. id.* at A697 (Reiner testifying that he had read the order carefully), their testimony and declarations do not cover the issue of Peters's familiarity with the Confidentiality Order, *see id.* at A239-43, A244-50, A680-706, A708-16, A819-24, although they were presumably the most knowledgeable about that point, aside from Peters herself. In fact, Sheridan never testified at all. Although Reiner's testimony, and an email, indicate that he had informed Peters of Judge Baer's April 16 instruction that her firm "should seek new discovery" in the Massachusetts action, *see id.* at A686, A835, he did not mention the Confidentiality Order in relation to that instruction.

Judge Baer and the Grievance Committee rejected Peters's assertion that she had acted in good faith as demonstrated by her reliance on Brackett's research on whether the Massachusetts and New York cases were the same litigation within the meaning of the Confidentiality Order. *See In re Peters*, 543 F. Supp. 2d at 334; App. at A839-41. However, a rejection of that evidence requires a finding as to her familiarity with the Confidentiality Order, *i.e.*, whether she knew, or should have known, that the Confidentiality Order barred the filing in Massachusetts of material covered by that order. Furthermore, if the Grievance Committee concludes, on remand, that Peters did not know that the Massachusetts filing was barred by the Confidentiality Order, but should have known, a finding as to the degree of her culpability is necessary since mere negligence might

29

not warrant severe, or any, disciplinary measures. *See* ABA Standards for Imposing Lawyer Sanctions, R. 6.23-6.24 (stating that reprimand or admonition is generally appropriate for negligent failure to comply with court order or rule). On the other hand, it is possible that Peters would warrant discipline for violating the Confidentiality Order even if she was not familiar with its terms — if, for example, her failure to familiarize herself with the order was in bad faith. However, such a conclusion would require detailed factual findings.

Second, we disagree with the Grievance Committee's conclusion that Peters's "good faith" defense is undermined by provisions of the Confidentiality Order that "provide[] a mechanism for seeking guidance from the Court on its scope," *In re Peters*, 543 F. Supp. 2d at 334 (citing Confidentiality Order ¶¶ 9, 10, 13), and by the asserted "fact that her own client did not agree with her use of the transcripts in the Massachusetts action," *id.* (citing *Wolters Kluwer*, 525 F. Supp. 2d at 514 n.254). Paragraph 9 of the Confidentiality Order permits "any person to seek judicial modification or amendment of [the] [o]rder"; paragraph 10 requires that notice be given to a party if disclosure is sought of that party's "Protected Material"; and paragraph 13 provides that the obligations created by the order would survive the termination of the lawsuit "unless ... modified by the respective Court in each action" and that the district court would retain jurisdiction to enforce, amend, or modify the order.

30

None of those provisions contain an explicit mechanism for seeking guidance on the scope of the Confidentiality Order. While such guidance could be sought, with or without reference to any provision of the Confidentiality Order, no provision mandates that a party seek guidance as to the meaning of a term or provision of the order or suggests that failure to seek guidance is necessarily unreasonable or in bad faith.

The record also does not contain clear evidence that Peters's client disagreed with her use of the New York transcripts in Massachusetts. At one point, the relevant witness, in-house counsel for the client, testified that he had instructed Peters to make an argument to the district court about the use of New York depositions in the Massachusetts action. *See* App. at A460-61. However, in response to a question about whether he understood that the district court had made a "further ruling on these issues," he testified that there had been "additional communications on that," without describing that ruling or those communications. *See id.* at A461. That witness also testified that he had authorized Peters to request the Massachusetts court to order the defendants to again produce the documents that Judge Baer had ordered be returned to him, *see id.* at A464, and that he had been consulted prior to the filing of New York transcripts in the Massachusetts action, had been advised that the Confidentiality Order did not cover the anticipated filing, and,

31

apparently, had not objected, *see* A518-19.[11]

Third, in finding that Peters had violated the Confidentiality Order in bad faith, the Grievance Committee adopted Judge Baer's conclusion that

> Peters used the transcripts [in the Massachusetts action] in a bad-faith effort for the improper purpose of gaining advantage (and expedient relief) in a new court after she had 'judge-shopped,' and after she had gained extensive discovery without providing any discovery of her own, and in an effort to have [the Massachusetts] Court eviscerate the Confidentiality Order that this Court had entered to govern discovery produced in this litigation.

*In re Peters*, 543 F. Supp. 2d at 334 (first alteration in original) (citing *Wolters Kluwer*, 525 F. Supp. 2d at 548).  This conclusion, however, links the Confidentiality Order allegation to several other allegations made in the defendants' sanction motion, without separate analysis of those other allegations.  Additionally, part of Judge Baer's conclusion was rendered questionable by this Court's opinion in the appeal from Judge Baer's reprimand order.

In that appeal, this Court reversed the district court's reprimand against Peters's law firm for voluntarily dismissing the

---

[11]   The testimony concerning in-house counsel's failure to object to the Massachusetts filing is ambiguous.  Peters asked in-house counsel the following question: "And you didn't say anything to me about not filing that pleading with the - - with transcripts attached, correct?"  App. at A518.  In-house counsel answered, "No," *id.* at A519, which might be interpreted as "No, you are not correct," or the opposite, "No, I didn't say anything to you about not filing that pleading."  The context appears to favor the latter interpretation.  At the very least, the testimony relevant to whether the client disagreed with the filing of the transcripts is too ambiguous to reach any firm conclusion.

*Wolters Kluwer* litigation, stating that the firm was "entitled to file a valid Rule 41 notice of voluntary dismissal for any reason," and rejecting Judge Baer's conclusion that the dismissal was an improper attempt to judge-shop, or that the filing of the Rule 41 notice itself was sanctionable. *Wolters Kluwer*, 564 F.3d at 114-15; *see also id.* at 115 ("It follows that Dorsey was entitled to file a valid Rule 41 notice of voluntary dismissal for any reason, and the fact that it did so to flee the jurisdiction or the judge does not make the filing sanctionable."). Furthermore, the record shows that there were legitimate reasons supporting dismissal, as both the client's in-house counsel and certain Dorsey attorneys, Peters included, had become aware of a possible lack of personal jurisdiction in New York; indeed, the defendants had filed a motion to dismiss on that basis. *See* App. at A648, A832 (e-mail exchange between Peters and opposing counsel discussing the issue). Additionally, there does not appear to be a dispute that Peters initially had opposed dismissal under Rule 41 and had instead attempted, unsuccessfully, to have the district court rule on her motion to have the case transferred to Massachusetts.[12] *See, e.g.,*

---

[12] In his May 2007 order, Judge Baer stated that, had Peters's client moved under 28 U.S.C. § 1404 to transfer venue, its argument that the Massachusetts action represented "continuing litigation" would have been stronger. *See Wolters Kluwer*, 2007 WL 1498114, at *8. However, Peters's firm had made such a motion in April 2007, and, as Judge Baer acknowledged in his later sanctions order, he had "declined to address the [venue] issue at that time." *Wolters Kluwer*, 525 F. Supp. 2d at 495.

*id.* at A202 (Peters Decl. ¶ 132), A239-41 (Reiner Decl. ¶¶ 2-6), A680-81 (Reiner testimony), A833-34 (emails, between Peters and other attorneys, discussing issue).

For the forgoing reasons, we also vacate the portion of the Grievance Committee's order sanctioning Peters based on the Confidentiality Order allegation. On remand, however, the Grievance Committee is free to make a new determination, based on detailed factual findings, of whether Peters acted with a culpable state of mind when she violated the Confidentiality Order and, if so, to discipline her accordingly.

## III.     Seven-Year Suspension

The preceding conclusions, by themselves, necessitate vacatur of the seven-year suspension imposed by the Grievance Committee. Thus, at this juncture, we need not address whether that suspension was excessive. However, if the Grievance Committee determines, after additional proceedings, that suspension or disbarment is warranted, the Committee should explain its rationale for the severity of the sanction imposed, with a discussion of: mitigating and aggravating factors; Peters's state of mind and motive; any prejudice caused by her conduct to the parties, public, and district court; and the relevant case law and other authorities supporting its

34

determination.

## IV.  **Conclusions**

For the foregoing reasons, the judgment of the district court is VACATED and the matter is REMANDED for further proceedings consistent with this decision.  In vacating the Grievance Committee's determination, we do not intend to suggest that the charges against Peters were improperly brought, only that certain procedures and findings were inadequate.  We therefore deny Peters's request that the Grievance Committee be directed to terminate its disciplinary proceeding against her.  All remaining issues raised by Peters in her brief either are rendered moot by this decision or should be raised in the first instance on remand.