# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2013
No. 13-1272-cv

IVAN STEPHAN FISHER,

*Appellant,*

*v.*

COMMITTEE ON GRIEVANCES FOR THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK,

*Appellee.*

Appeal from the Committee on Grievances for the United States
District Court for the Southern District of New York.
No. 13-1272-cv — P. Kevin Castel, *Judge, Chairman*.

ARGUED: JUNE 17, 2014
DECIDED: JULY 22, 2014

Before: PARKER, CHIN, and LOHIER, *Circuit Judges*.

Appeal from an order of the Committee on Grievances for the United States District Court for the Southern District of New York, entered March 14, 2013, directing that appellant's name be stricken from the roll of attorneys admitted to practice in its court.

**AFFIRMED**.

---

DAVID L. LEWIS, Lewis & Fiore, New York, New York, *for Appellant*, and Ivan Stephan Fisher, *pro se*, Law Office of Ivan S. Fisher, New York, New York, *on the brief*.

SHAWN PATRICK REGAN (Joseph J. Saltarelli, Joshua S. Paster, *on the brief*), Hunton & Williams LLP, New York, New York, *for Appellee*.

---

*PER CURIAM*:

Appellant Ivan Stephan Fisher is a criminal defense lawyer who zealously represented clients for more than forty years. In 2007, a client, Abrahim Raphael, entrusted Fisher with $250,000 to be used to pay restitution to the victim of Raphael's crimes. Instead, Fisher used $180,000 of the money for personal purposes. The Committee on Grievances for the United States District Court for the Southern District of New York (the "Committee") found that this conduct violated, *inter alia*, Disciplinary Rule of the New York Lawyer's Code of Professional Responsibility ("DR") 1-102(A)(4),

which provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.[1]  Consequently, the Committee struck Fisher's name from the roll of attorneys admitted to practice in its court.

Fisher appeals.  He concedes that he acted unethically, but he contends that the Committee abused its discretion by disbarring him rather than imposing a lesser penalty.  We affirm.

## BACKGROUND

### I.    Facts

In 2004, Raphael retained Fisher to represent him in a criminal investigation of a scheme to embezzle funds from International Gemological Institute, Inc. ("IGI").  In late 2005, Raphael entered into a cooperation agreement with the Government and pleaded guilty to one count of conspiracy to commit money laundering and one count of conspiracy to commit wire fraud.  Raphael's sentencing before Judge Kimba M. Wood was adjourned so that Raphael could assist the Government and help IGI recover the stolen funds.

In the summer of 2007, Raphael gave Fisher $250,000 for the payment of restitution to IGI.  Fisher placed the money in his

---

[1] The conduct occurred prior to April 1, 2009, when the New York Rules of Professional Conduct superseded the Code of Professional Responsibility.  *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.

general operating account and used some of it for personal purposes, including medical expenses. At Fisher's request, Raphael signed a letter in September 2007 stating that he loaned Fisher money.

In January 2008, Fisher told Raphael that he had spent $50,000 of the restitution funds and asked Raphael to raise more money. When Raphael borrowed and delivered another $50,000, Fisher paid only $120,000 to IGI. From March 2008 through September 2009, Fisher asked the district court to adjourn Raphael's sentencing approximately fifteen times for various reasons, including that Raphael was still procuring the money necessary for restitution.

In 2009, Raphael told attorney James O. Druker that he had given Fisher $250,000 to pay to IGI, but that Fisher had spent some of the money and had not fully paid the restitution. Druker was substituted as counsel for Raphael and disclosed to the district court what he had learned of Fisher's conduct.

Prior to his sentencing, Raphael borrowed an additional $30,000 from his brother and assigned to IGI his claims against Fisher and his right to $100,000 Druker had requested from the Lawyers' Fund for Client Protection. IGI prepared to commence a civil action against Fisher to enforce the rights assigned by Raphael. In December 2011, Fisher executed an Affidavit of Confession of

Judgment in which he swore that Raphael "gave $250,000 to [him] to hold in trust for the benefit of IGI for the express purpose of holding the funds for the benefit of IGI and making the restitution payment to IGI prior to sentencing." Hr'g Tr., Apr. 23, 2012, at 156. Fisher spent some $180,000 of the total of $300,000 given to him by Raphael.[2] Fisher never repaid this money to Raphael.

## II.    Proceedings Below

On January 29, 2010, Judge Wood referred Druker's complaint that Fisher had misappropriated Raphael's funds to the Committee.[3] On December 20, 2011, Judge Wood referred a second complaint to the Committee, from counsel for IGI, raising the same allegations.

The Committee appointed Sheldon Elsen as Investigating Counsel for the matter. Elsen issued a statement of charges, alleging

---

[2] Although there may have been some question as to the total amount of money Raphael gave Fisher, the Committee ultimately adopted Magistrate Judge Pitman's findings that Fisher initially received $250,000 from Raphael and later borrowed an additional $50,000 from him.

[3] As of January 23, 2012, the members of the Committee were District Judge Jed S. Rakoff, Chair; Chief Judge Loretta A. Preska; District Judges Vincent L. Briccetti, P. Kevin Castel, Paul G. Gardephe, John F. Keenan, Colleen McMahon, Louis L. Stanton, and Richard J. Sullivan; and Magistrate Judge Frank Maas. By December 10, 2012, the composition of the committee had changed to District Judge P. Kevin Castel, Chair; Chief Judge Loretta A. Preska; District Judges Vincent L. Briccetti, Katherine B. Forrest, Paul G. Gardephe, John F. Keenan, Colleen McMahon, Louis L. Stanton, and Richard J. Sullivan; and Magistrate Judge Frank Maas.

violations of DR 9-102(A), which prohibits a lawyer from misappropriating client funds or commingling client funds with his own property; DR 9-102(B), which provides that a lawyer must maintain client funds in a bank account that meets certain requirements; DR 9-102(C)(4), which instructs that a lawyer must promptly deliver client funds to the client or a third party as requested by the client; DR 1-102(A)(4), which provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; and DR 5-104(A), which prohibits a lawyer from entering into a business transaction with a client unless certain requirements are met.

On March 23, 2011, Fisher was ordered to show cause why he should not be disciplined. Fisher denied that he had violated any of the Disciplinary Rules. Specifically, he claimed that Raphael wanted to put $250,000 in Fisher's bank account and Fisher explained to him that he could only accept the funds if Raphael understood they were a loan to Fisher. Fisher also explained that he had undergone seven surgeries and was taking "extremely strong pain medicine with side effects, the most significant of which related to [his] mental functioning." Letter from Ivan S. Fisher to Judge Jed S. Rakoff, Chair, Committee on Grievances (July 11, 2011), at 7.

On January 23, 2012, the Committee determined that Fisher violated DR 5-104(A) by entering into a business transaction with his client without taking steps to protect his client's interests, and DR 9-102(C)(4) by failing to pay or deliver Raphael's funds at Raphael's request. The Committee suspended Fisher from practicing law before the court, pending a determination as to discipline.

Fisher moved for reargument, seeking an evidentiary hearing on the two charges the Committee found he had violated. The Committee granted Fisher an evidentiary hearing on all the charges and referred the matter to Magistrate Judge Henry Pitman.

During a four-day hearing, the Magistrate Judge heard testimony from Fisher, Raphael, Druker, and others. Fisher testified that he received the funds from Raphael as a loan. Raphael, in contrast, testified that he did not intend to loan Fisher money because he had no reason to do so and was having substantial difficulty raising and borrowing the restitution funds. He explained that he did not read the loan document he executed in September of 2007, but rather signed it because Fisher explained that it was necessary to avoid tax problems.

Fisher described the effect that his surgeries and health had on his practice of law during the time in question. Lawrence Gerzog, a criminal defense attorney who had a close professional relationship

with Fisher, testified that the pain medications, which included OxyContin, affected Fisher's ability to engage in lucid conversation. Druker also observed that when he spoke with Fisher during the relevant time, he had the impression that Fisher was groggy from medications.

In a Revised Report and Recommendation dated August 23, 2012, the Magistrate Judge determined that Fisher did not violate DR 5-104(A), but did violate (1) DR 9-102(A),(B), and (C)(4), which govern a lawyer's handling of a client's funds; (2) DR 1-102(A)(4), which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; (3) DR 1-102(A)(5), which prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice; and (4) DR 1-102(A)(7), which prohibits a lawyer from engaging in any other conduct that adversely reflects on the lawyer's fitness to practice law. He concluded that the "facts establish[ed], by clear and convincing evidence[,] . . . that Fisher intentionally misappropriated his client's funds, commingled his client's funds with his own personal property, failed to deliver the funds . . . as requested by his client and as ordered to do so by the Court, and converted those funds to his own personal use." Revised Report and Recommendation, Aug. 23, 2012, at 22. Moreover, the Magistrate Judge determined that

Fisher "deceived his client by lying to him about the need for a loan document and lied to his client about the status of the restitution payment." *Id.* The Magistrate Judge explained that he failed to credit Fisher's account that the funds from Raphael were a personal loan, in part, because it was "internally inconsistent," and "ma[d]e[ ] no sense" in the context of Raphael's pending criminal case. *Id.* at 19-20.

In an Opinion and Order dated December 10, 2012, the Committee adopted Magistrate Judge Pitman's findings and conclusions of law. The Committee agreed that "the purported documentation of the transaction as a loan was a sham," and that Fisher "stole his client's money and has never repaid it." Op. and Order, Dec. 10, 2012, at 3-4.[4]

On December 21, 2012, Fisher moved for reconsideration. Fisher argued, among other things, that the Committee "overlooked the substantial evidence that for a substantial period of time, including the summer of 2007, [he] was suffering from a series of debilitating illnesses, undergoing major surgical procedures, and

---

[4] Judge Stanton dissented, in part, on the ground that "the evidence of a venal intent does not rise to the clear and convincing standard required to support a finding of dishonesty, fraud, deceit or manipulation" required for a violation of DR 1-102(A)(4). Op. and Order, Dec. 10, 2012 (Stanton, *J.*, dissenting in part).

taking serious prescribed pain medications . . . which clearly had an impact on his thinking and judgment." Mem. in Supp. of Mot. for Recons. or Reargument, Dec. 21, 2012, at 2. The Committee denied the motion.

Several of Fisher's colleagues submitted letters on his behalf attesting to his skills as an advocate, his dedication to his clients, and his contributions to the legal profession. For example, one colleague stated that he had "learned so much" from Fisher who was "the premier criminal trial lawyer of his generation." App. at 186. Another colleague wrote that Fisher's "achievements over the years not only in so-called high profile cases but also in the more ordinary cases that consume most of our time as criminal law practitioners, bear testament to his creativity, judgment and persuasive abilities." *Id.* at 188. Another lawyer noted that Fisher "always seems to be asking, 'Isn't there something more that we can do on behalf of this client?'" *Id.* at 193. Many lawyers described how Fisher had provided them advice and mentorship. Indeed, one colleague wrote, "[f]or as long as I have known Ivan Fisher I, along with many of my peers, have looked up to him as an honorable and ethical attorney whose ability shined above virtually all others." *Id.* at 200.

After considering Fisher's conduct, his career, and letters of support on his behalf, the Committee issued an Opinion and Order

on Sanction on March 14, 2013, directing that, based on his violations of the Disciplinary Rules, Fisher be stricken from the roll of practicing attorneys of the court.[5]

This appeal followed.

## DISCUSSION

### I.    Applicable Law

We review a disciplinary order entered by a district court for abuse of discretion. *See In re Peters*, 642 F.3d 381, 384 (2d Cir. 2011) ("*Peters I*") (per curiam).  When, however, "the district court is accuser, fact finder and sentencing judge all in one, . . . this Court's review is more exacting than under the ordinary abuse-of-discretion standard." *Id*. (internal quotation marks omitted).  Specifically, we "must be careful to ensure that any [decision to impose sanctions] is made with restraint and discretion." *Id.* (internal quotation marks omitted; alteration in original). [6]

---

[5] Judge Stanton dissented for the reasons set forth in his dissent of December 10, 2012.

[6] The parties dispute whether, because the Committee appointed a private practitioner to investigate Fisher's charges and Magistrate Judge Pitman made findings of fact and conclusions of law that the Committee reviewed *de novo*, this more exacting standard applies.  We need not resolve the issue.  Even under the more exacting standard, we find that the Committee's decision to disbar Fisher was "made with restraint and discretion." *Peters I*, 642 F.3d at 384*.*

Pursuant to Local Rule 1.5(b) of the United States District Courts for the Southern and Eastern Districts of New York, the Committee may impose discipline or other relief if, among other things, a lawyer's conduct is found by clear and convincing evidence to violate the New York State Rules of Professional Conduct. In making its determination, the Committee gives "due regard to decisions of the New York Court of Appeals and other New York State courts." S.D.N.Y. & E.D.N.Y. Local Civ. R. 1.5(b)(5).

DR 1-102(A)(4) provides that a lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.3(A)(4). "Venal intent" is an element of a violation of DR 1-102(A)(4). *See Peters I*, 642 F.3d at 394. It is defined as "scienter, deceit, intent to mislead, or knowing failure to correct misrepresentations." *Peters v. Comm. on Grievances for U.S. Dist. Court for S. Dist. of N.Y.*, 748 F.3d 456, 461 (2d Cir. 2014) ("*Peters II*") (per curiam) (internal quotation marks omitted). "The 'venal intent' necessary to support intentional conversion is established where . . . the evidence shows that the attorney knowingly withdrew client funds without permission or authority and used said funds for his own personal purposes." *Matter of Katz*, 109 A.D.3d 143, 146 (1st Dep't 2013). "[A]bsent exceptional mitigating circumstances[,] the intentional conversion of

escrow funds mandates disbarment." *Id.* (internal quotation marks omitted).

## II. Application

On appeal, Fisher does not challenge the fact that he engaged in misconduct. Instead, he claims that the evidence did not support a finding that his "misconduct entailed the venality that is essential to" a violation of DR 1-102(A)(4), and he argues that disbarment was not warranted. Appellant's Br. at 2-3. We disagree in both respects.

The evidence here was sufficient to support a finding that Fisher acted with venal intent. He received monies from his client for the payment of restitution, placed the funds in a general operating account, and then used some $180,000 of it for personal purposes. Moreover, nothing in the record suggests that the Magistrate Judge's findings that Fisher "deceived his client" and lied to him are clearly erroneous. Revised Report and Recommendation, Aug. 23, 2012, at 22. Rather, the record supports a determination that Fisher "knowingly withdrew client funds without permission or authority and used said funds for his own personal purposes," *Katz*, 109 A.D.3d at 146, and "inten[ded] to mislead" his client, *Peters II*, 748 F.3d at 461. Nothing more is required to establish venal intent. *See id.* at 461-62.

Fisher claims that the Committee failed to weigh the "aberrant" nature of his misconduct and the adverse state of his health in assessing whether he had the requisite venal intent and imposing punishment. The Magistrate Judge acknowledged, however, that "Fisher had practiced law for more than forty years as a well-known and well-respected criminal defense attorney," and that he "was very ill at certain times during his representation of Raphael." Revised Report and Recommendation, Aug. 23, 2012, at 5, 12 n.7. Likewise, in issuing its sanction, the Committee stated that it had "considered [Fisher's] age, health, financial condition and his long distinguished career as a criminal defense counsel and zealous advocate for his clients." Op. and Order on Sanction, Mar. 14, 2013, at 1. Moreover, the Committee considered Fisher's prior disciplinary history, which "included one public censure twenty years ago arising from his misdemeanor convictions for one count of willfully failing to file an income tax return and two counts of failing to pay income taxes." *Id.* at 2. Contrary to Fisher's suggestion, therefore, the Committee did consider Fisher's misconduct in the context of his career and health conditions.

Nonetheless, the Committee concluded that disbarment was appropriate. The Committee emphasized the "serious aggravating circumstances present" in Fisher's conduct. *Id.* Specifically, the

Committee explained that Fisher "did not deposit the funds in an attorney trust account as he should have but, instead, tried to recharacterize the payment as an unsecured loan by the client to him." *Id.* Moreover, Fisher's "conduct resulted in a direct monetary loss to his client, . . . . a financial benefit to himself[,] and was venal," as "[it] was a breach of [Fisher's] most fundamental professional responsibilities to his client." *Id.*

In light of these circumstances and the record as a whole, we find no abuse of discretion in the Committee's decision to strike Fisher's name from the roll of attorneys admitted to practice in its court. Even accounting for his long and notable career, during which Fisher's contributions to his clients and the legal profession were many, we conclude that disbarment was within the range of appropriate punishments. *See Katz*, 109 A.D.3d at 146.

## CONCLUSION

The order of the Committee is **AFFIRMED**.