[12 NYS3d 99]

In the Matter of IVAN S. FISHER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 9, 2015

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Vitaly Lipkansky* of counsel), for petitioner.

*Sarah Diane McShea* for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Ivan S. Fisher was admitted to the practice of law in the State of New York by the Second Judicial Department on December 23, 1968. At all times relevant to these proceedings, respondent maintained an office for the practice of law within the First Judicial Department.

By order dated March 14, 2013, the United States District Court for the Southern District of New York disbarred respondent for, inter alia, misappropriation and conversion of client funds (Code of Professional Responsibility DR 9-102 [a] [22 NYCRR 1200.46 (a)]; DR 1-102 [a] [4] [22 NYCRR 1200.3 (a) (4)]), which order was affirmed by the Second Circuit Court of Appeals on July 22, 2014 (759 F3d 200 [2014]). The events giving rise to the federal disbarment need to be recounted in some detail in order to give context to the motion and cross motion currently pending before us.

In 2004, Abrahim Raphael retained respondent to represent him in connection with a federal criminal investigation and subsequent indictment concerning his role in the embezzlement of funds from his employer, International Gemological Institute (IGI). On September 13, 2005, Raphael pleaded guilty in the United States District Court for the Southern District of New York to conspiracy to commit money laundering and conspiracy to commit wire fraud (18 USC §§ 371, 1349, 1956 [h]). His sentencing was adjourned for him to, inter alia, make restitution to IGI.

In July 2007, Raphael wired $250,000 to respondent's operating account for the payment of restitution to IGI. In September 2007, respondent advised Raphael that he was not holding the restitution funds in an escrow account and that to avoid any

"tax problems" he needed Raphael to sign a letter stating that the $250,000 was a loan to respondent, which Raphael did.

In January 2008, respondent told Raphael that he had spent $50,000 of the restitution funds and requested that Raphael provide additional funds for the restitution. Raphael then borrowed an additional $50,000 which he remitted to respondent. Respondent ultimately only paid $120,000 to IGI for restitution. From March 2008 through September 2009, respondent requested that Raphael's sentencing be adjourned approximately 15 times for various reasons which included the representation that Raphael was trying to raise the funds necessary to pay restitution as per the plea agreement.

In 2009, Raphael disclosed to James O. Druker, Esq., his counsel in a separate tax matter, that respondent had spent some of the $250,000 which was supposed to have been paid to IGI. In August 2009, Druker substituted respondent as Raphael's counsel and in September 2009, disclosed respondent's conduct to Judge Kimba Wood, who was presiding over respondent's case.

On January 21, 2010, Judge Wood sentenced Raphael to three years probation. In order to meet his restitution obligation, Raphael borrowed an additional $30,000 from his brother and assigned to IGI his claims against respondent and his right to $100,000, which Druker had requested from the Lawyers' Fund for Client Protection. That same month, after Raphael was sentenced, Judge Wood referred respondent to the Southern District's Committee on Grievances (Grievance Committee).

In September 2009, Druker also filed a complaint on Raphael's behalf with the First Department Disciplinary Committee (DDC), which initiated an investigation of respondent's conduct. During 2010, in connection with the DDC investigation, respondent answered the complaint and was deposed.

In March 2011, the Grievance Committee directed respondent to show cause why it should not impose discipline, based on a statement of six allegations charging respondent with misappropriation, conversion, commingling and improperly entering into a business transaction with a client without required disclosures.

In July 2011, respondent was again deposed by the DDC.

In December 2011, after learning that IGI intended to commence a civil action against him, respondent executed an affi-

davit of confession of judgment in which he swore that Raphael had given him $250,000 to hold in trust for the benefit of IGI for the purpose of restitution which was to be paid over to IGI prior to Raphael's sentencing. Respondent spent approximately $180,000 of the funds he received from Raphael on personal and business expenses unrelated to Raphael's case. To date, respondent has not repaid any of these funds.

Also that month, the DDC brought four charges against respondent, one of which (charge 3) was based on Raphael's complaint, alleging that respondent violated Code of Professional Responsibility DR 5-104 (a) (22 NYCRR 1200.23 [a]) (improper loan transactions with a client). Significantly, the DDC did *not* charge respondent with misappropriation or conversion of Raphael's restitution funds. By subsequent stipulation, the DDC inter alia amended the language of charge 3, referring to the $224,000 as "Ra[ph]ael's funds" to read that "respondent had already used, at a minimum, $224,000 of *the proceeds of the loan from Raphael* for his own personal and/or business purposes" (emphasis added). Respondent admitted to charge 3 as amended by the stipulation, as well as two other charges.

On March 15, 2012, a hearing on sanctions was held before a Referee. The DDC did not call any witnesses but relied solely on respondent's admissions to the charges in the prehearing stipulation as well as other documentary evidence. Respondent testified on his own behalf in mitigation and called character witnesses. In posthearing memoranda, the DDC argued for a nine-month suspension and respondent urged a public censure.

By report dated October 25, 2012, the Referee sustained the three charges against respondent and recommended that he be suspended for six months.

With respect to the DR 5-104 (a) (22 NYCRR 1200.23 [a]) loan transaction charge (charge 3), the Referee noted that Raphael had *not* appeared as a witness, nor had the DDC introduced any statement by him. The Referee noted that DDC staff counsel "made clear that Charge Three in no way implies that Respondent 'stole' his client's money" and that charge 3 was "purely a loan issue." Nevertheless, the Referee found that, as Raphael's lawyer, respondent "should never have used his client's good will and money as he did, *borrowing* entirely for his own temporary solvency and completely abandoning his obligation to serve his client's best interest at all times" (emphasis added). The Referee further found that respondent's

misconduct was mitigated by his health problems and the resulting adverse effects on his practice.

In the midst of the DDC's proceeding, the federal Grievance Committee continued its proceeding against respondent. By order entered January 24, 2012 (2012 WL 206122 [SD NY, Jan. 24, 2012, No. M-2-238]), it immediately suspended respondent from practice before the Southern District pending final discipline. By order dated February 13, 2012, the United States District Court for the Eastern District of New York immediately suspended respondent based on the Southern District's interim suspension order.

The matter was thereafter referred to Magistrate Judge Henry Pitman to hear and report. The interim suspension remained in effect.

In April 2012, after the DDC hearing on sanctions had concluded but before the Referee issued his report, Judge Pitman held a four-day evidentiary hearing at which, inter alia, Raphael, respondent and Druker testified.

In his final report and recommendation dated August 23, 2012, Judge Pitman found by clear and convincing evidence that respondent had engaged in professional misconduct which included intentional misappropriation of Raphael's restitution funds, commingled client and personal funds, converted those funds to his personal use and deceived his client by lying to him about the need for a loan document, as well as the status of the restitution payment. Judge Pitman rejected respondent's position that Raphael's funds were a loan and discredited "all the testimony offered by [respondent] that tends to suggest that Raphael made an undocumented, interest-free, unsecured, demand loan to [respondent]." Judge Pitman further found that respondent had *not* violated DR 5-104 (a) because there was no bona fide business transaction (i.e., a loan) with Raphael (*Matter of Fisher*, 908 F Supp 2d 468, 483 [SD NY 2012]).

Respondent submitted objections to Judge Pitman's final report, which were rejected in the Grievance Committee's decision of December 10, 2012 (908 F Supp 2d 468 [2012]). That decision adopted Judge Pitman's findings in their entirety and afforded respondent the opportunity to file a submission addressing the issue of sanction.

On December 14, 2012, a DDC Hearing Panel heard oral argument. In February 2013, after learning of the Grievance

Committee's misconduct finding, but prior to issuance of the Hearing Panel's report, the DDC moved for a stay of its disciplinary proceeding until the conclusion of the federal disciplinary matter, contending that once the Southern District issued a final sanction order it would be obligated to move for reciprocal discipline pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.3. On March 8, 2013, we issued a stay of the DDC proceeding until further order.

As noted, the Grievance Committee disbarred respondent on March 14, 2013, which decision was affirmed by the Second Circuit on July 22, 2014.

Based on this decision, the DDC now moves for an order imposing reciprocal discipline and disbarring respondent predicated on his disbarment in the Southern District, as well as for an order lifting the stay and dismissing as moot the Committee's pending disciplinary proceeding.

In its moving papers, the DDC avers that, although it was aware of the federal proceeding, the Grievance Committee did not update it regarding the details and status of the federal proceeding against respondent. Further, it did not learn of the Southern District's misconduct findings until after the Hearing Panel heard oral argument. As to the fact that it did not charge respondent with misappropriation and conversion, the DDC avers that when it filed its charges on December 5, 2011, respondent had not yet executed the affidavit of confession of judgment in which he acknowledged that he was holding the restitution funds in trust for IGI.

As to the request that we lift the stay and dismiss its earlier proceeding as moot, the DDC argues that the federal proceeding made full factual and legal findings on the same subject matter that was before it. The DDC contends the only defenses to reciprocal discipline are a lack of notice and opportunity to be heard in the foreign jurisdiction; an infirmity of proof establishing the misconduct; and the misconduct at issue in the foreign jurisdiction would not constitute misconduct in New York (22 NYCRR 603.3 [c]).

Respondent has filed a cross motion requesting that we impose an indefinite medical suspension pursuant to 22 NYCRR 603.16 (c) and hold the DDC's reciprocal discipline petition in abeyance until we determine that respondent is no longer incapacitated from practicing law.

In support of his application, respondent has submitted various medical information and reports, including, inter alia, a

report from his physician of 20 years, that chronicles his various ailments, and references surgeries and treatments respondent is receiving from other physicians. This affirmed report lists 11 medications that are currently prescribed to respondent, some of which impact his short-term memory, and sets forth an opinion that respondent's present condition is such that he is incapable of practicing law and renders it "impossible for him to assist his attorney in defending the disciplinary proceeding which I am advised is pending."

The DDC opposes the cross motion, arguing that respondent has not demonstrated that he cannot assist in his defense of the reciprocal discipline charges. It also contends there is no defense to this reciprocal proceeding. In the alternative, it asks that we direct respondent to submit to an examination of his capacity to practice law by the Committee's designated experts.

The instant proceeding presents what appears to be an unprecedented situation in that the Committee seeks to disbar respondent based on a finding in a federal disciplinary proceeding that he, inter alia, intentionally converted client funds, notwithstanding that, in its own proceeding, the DDC stipulated, and a Referee concluded, that respondent had *not* done so. Thus, respondent may have an arguable defense under 22 NYCRR 603.3 (c) (3).

Respondent has submitted sufficient documentation from his various medical providers as to his current medical condition and how that, due to such condition, he is presently unable to adequately assist his counsel in preparing a defense.

Accordingly, respondent's cross motion is granted to the extent that he is suspended from the practice of law pursuant to 22 NYCRR 603.16 (c) (1), on the ground that he is suffering from a disability by reason of physical or mental infirmity or illness which makes it impossible for him to adequately assist counsel in his defense, effective immediately and until further order of this court (*Matter of Rabinowitz*, 97 AD3d 192 [1st Dept 2012]; *Matter of Farinella*, 91 AD3d 35 [1st Dept 2011]). Respondent is directed to provide the Committee with an updated report as to his medical condition in six months from the date of this order. Further, if the Committee so requests, he is to be examined by qualified medical experts as designated by the Committee thereafter (*see* 22 NYCRR 603.16 [b]).

The Committee's motion shall be held in abeyance until such time as respondent's disability no longer exists and until further order of this Court.

SWEENY, J.P., MOSKOWITZ, FEINMAN, GISCHE and CLARK, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, for an indefinite period, as indicated, and proceeding held in abeyance until further order of this Court.